MARIA GUGLER, APPELLEE, V. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED APRIL 9, 1910. No. 15,958.

1. **Trial: INSTRUCTIONS: PREPONDERANCE OF EVIDENCE.** When several witnesses contradict one witness as to a material fact, and the court in its instructions tells the jury that "by a preponderance of evidence is not necessarily meant the greater number of witnesses testifying on one side or the other, nor to any given fact or set of facts", and the court also attempts to recite in its instructions the matters properly to be considered in determining the preponderance of the evidence, such instructions should be complete and embrace all matters disclosed by the evidence that ought to be so considered by the jury.

2. ——: ——. It is not error to refuse an instruction that is so indefinite that it might be reasonably understood by the jury to mean that they should consider the number of witnesses called by a party in a trial in determining the facts as to which they testify.

3. **Street Railways: INJURY TO PASSENGER: EXPERT EVIDENCE.** In an action for damages for personal injury, there being evidence tending to prove that negligence of the defendant caused the plaintiff to fall upon the pavement, it is not error requiring a reversal of the judgment to permit a qualified physician, who has shown himself competent as an expert, to testify that a fall upon the pavement could have caused the injuries from which he found the plaintiff suffering upon examination after the accident, the defendant having an opportunity to cross-examine such witness as to whether in his opinion the fall was the cause of the injuries.

4. Trial: EVIDENCE: REFUSAL TO STRIKE. When a witness gives a proper but incomplete answer to a proper question, it is not error to refuse to strike out such answer.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*John L. Webster* and *W. J. Connell,* for appellant.

*Weaver & Giller, contra.*

SEDGWICK, J.

The plaintiff in attempting to alight from one of defendant's cars was thrown to the ground and injured, and brought this action to recover damages which she says she sustained from such injury. In her petition the plaintiff alleged that while she was in the act of alighting from the car, and before she had sufficient time to do so, the car was suddenly and immediately started forward by the defendant, and that plaintiff was "thereby jerked, thrown, and dragged down from said car to and upon the pavement." The answer denied these allegations of the plaintiff, and alleged that after the car had passed a certain street the "plaintiff arose from her seat and stepped hurriedly to the running board", and that the motorman immediately reduced the speed of the car "for a stop at the next street intersection", and that the conductor of the car "called to the plaintiff several times to wait until the car stopped, * * * but that plaintiff wilfully, recklessly and negligently jumped from the said moving car to the street" before the car had reached its stopping place. The case was tried to a jury, and there was a verdict for the plaintiff, from which the defendant appeals.

1. The most important question in the case arises from the refusal of the court to give to the jury instruction No. 5 asked by the defendant. The plaintiff, who appears not to have been familiar with the English language, gave her evidence through an interpreter, and in some respects it may be said to be somewhat disconnected; but, taken alto-

gether, her story is reasonable and consistent. She testifies that while she was attempting to alight from the car, after it had come to a full stop, the car was suddenly started, and that this sudden starting of the car was the cause of her falling to the ground and sustaining the injury complained of. The defendant produced five witnesses, besides the conductor of the car, who testified positively that the plaintiff started to leave the car while the car was in motion, and that the conductor and some of the passengers warned her several times not to alight from the car until it had stopped, and that she paid no attention to these warnings and stepped from the car to the ground before the car was stopped, and so was thrown down and injured. The court on its own motion instructed the jury as follows: No. 7. "By a preponderance of evidence, as used in these instructions, is not necessarily meant the greater number of witnesses testifying on one side or the other, nor to any given fact or set of facts, but by this term is meant rather the weight of evidence, that which on the whole, when fully, fairly and impartially considered by the jury, produces the stronger impression upon the minds of the jury and is more convincing as to its truth when weighed against the evidence in opposition thereto." The defendant requested the court to give to the jury the following instruction: No. 5. "You are instructed that the testimony of witnesses who appear to you to be fair, truthful, and honest should not be disregarded; and you are further instructed that, when any of the witnesses called by one party have had the means and opportunity of knowing and observing the facts about which they testify, equal to that of the witnesses called by the other party, and are of equal or greater credibility, it is proper for you in such cases to take into account and consider the number of such witnesses in determining the facts about which they testify." The court refused to give this instruction, and the defendant excepted. The instruction given by the court is the usual instruction in such cases, and, indeed, it is not criticised by the defendant

as being in itself incorrect, but it is insisted that it was not complete, and that under the circumstances in this case, and in the condition of this evidence, it was misleading to the jury, so that the refusal to further explain the meaning of the court as requested by the defendant was erroneous and prejudicial to the rights of the defendant. Of course, in considering the probable effect of any given instruction, it is necessary to consider the entire charge of the court, that is, the instructions are to be considered and construed together. In this case the court gave the further instruction which is usual and generally approved, as follows: No. 8. "You are the sole judges of the credibility of the witnesses and the weight to be given to the testimony of each and all of them. In determining the weight to be given to the testimony of the several witnesses, the jury should take into consideration their interest or lack of interest, if any, in the result of the suit; their apparent fairness, bias, or prejudice, if any such appears; their conduct and demeanor while testifying; their distinctness of recollection; their opportunities for seeing and knowing the things about which they testify; the reasonableness or unreasonableness of the story told by them; and all the evidence, facts and circumstances proved tending to corroborate or contradict such witnesses, if any such appear. In so far as there may be a conflict in the evidence, it is your duty to reconcile it if you can; or, if you cannot, then to determine which is true and which is untrue, and to give such weight to the testimony of any witness as you may deem it entitled to under all the circumstances of the case." The plaintiff insists that these two instructions, the one following the other and virtually regarded as one instruction, need no further explanation, and that there can be no necessity under any circumstances of anything further upon the matters covered by these two instructions.

In *Hoskovec v. Omaha Street R. Co.*, 80 Neb. 784, the court, after giving, on its own motion, an instruction substantially equivalent to instruction No. 8, given by the

court in this case, gave, at the request of the defendant,
an instruction defining the burden of proof which devolved
upon the plaintiff, and followed that instruction with in-
struction No. 5, as follows: "While it is true that the
weight of evidence does not necessarily depend upon the
number of witnesses who testify for the respective sides,
yet it is proper for you to take into account and consider
in determining any matter in controversy the number of
witnesses giving testimony, and you should not arbitrarily
reject the testimony of any witness without just cause."
And it was held that, under the circumstances in that
case, the giving of this instruction was erroneous. In
discussing the question so presented the court, through
Mr. Commissioner Calkins, said: "When the jury was told
that it was entitled, in weighing the testimony of any
witness, to consider the extent to which it was corrob-
orated by other witnesses, the defendant was given all the
advantage to which it was entitled by the preponderance
in number of its witnesses. * * * We are satisfied
that the instruction should not have been given without
the jury's attention being again called to the caution con-
tained in instruction numbered 3, given by the court on
its own motion." We have no doubt that the conclusion
in that case was correct, and that the instruction criti-
cised was not properly given. Coupled as it was with the
instruction immediately preceding, it gave altogether too
much emphasis to the "number of witnesses giving testi-
mony." It left the matter so indefinite that the jury
might have understood that the instruction referred to the
whole number of witnesses giving testimony in the case.
We are not entirely satisfied with the expression first
quoted above from that opinion. When the court under-
takes to enumerate to the jury the matters that should be
considered in determining the preponderance of the testi-
mony, it should include all of the essential elements to be
considered in that connection. The extent to which a
witness is corroborated should be considered in weighing
the testimony of that witness, but it is still more important

that the testimony of all the witnesses should be considered together in determining upon which side of the given proposition is the preponderance of the testimony.

It will be noticed that instruction No. 7, given by the court in this case, calls the attention of the jury to the fact that upon a certain issue in the case a greater number of witnesses has testified upon the one side than upon the other, and tells them that it is not necessary for them to believe the greater number rather than the smaller number. This is, of course, true, and is a correct statement of the law; but it is in the interest of one party to the litigation and against the interest of the other, and, no doubt, the instruction would be more satisfactory if it presented fully and correctly the interest of both parties in the matter so called to the attention of the jury; that is, when any subject embraced in the evidence is brought to the attention of the jury and its effect upon one of the parties explained, it is desirable, and generally thought to be necessary, to explain fully its effects upon either side of the issue to which it relates. The thought that two or three witnesses are better than one is not new. "At the mouth of two witnesses, or three witnesses, shall he that is worthy of death be put to death; but at the mouth of one witness he shall not be put to death." Deut. xvii, 6. And hundreds of years later, but nearly 2,000 years ago, this thought is repeated by the greatest of all lawgivers: "But if he will not hear thee, then take with thee one or two more, that in the mouth of two or three witnesses every word may be established." Matt. xviii, 16. Can it be doubted that to remind the jury that many witnesses have contradicted one witness upon a vital issue in the case, and tell them that it is not necessary that they believe the many rather than the one, is but a partial statement of an important matter? It is better to fail to instruct upon a particular feature of the evidence, rather than to give an imperfect and partial analysis of it.

In *Northern P. R. Co. v. Holmes,* 3 Wash. Ty. 543, 18

Pac. 76, the court considered the following instruction which was given by the trial court: "If, however, the witnesses who testify differently to the same facts are all of them of equal candor, fairness, intelligence, and truthfulness, and equally well corroborated by all the other evidence, and are upon an equal footing as to interest in the result of the suit, then the preponderance of evidence as to that fact would be determined by the number of witnesses"—and concluded that the giving of the instruction was not prejudicially erroneous, although as an abstract proposition it was thought the instruction might be conceded to be erroneous. The fault of the instruction is that it omitted many things that the jury might consider together with the things enumerated, including the number of witnesses. Surely, when several witnesses testify differently as to some material fact, the jury, in determining the preponderance of the evidence on the issue so controverted should consider all of the matters recited by the court in the eighth instruction quoted above, and all of the facts and circumstances disclosed by the evidence bearing upon the point in dispute, as well as the number of witnesses agreeing in their testimony as to the fact controverted.

Instruction No. 5, tendered by defendant, cannot be regarded as a model to be followed in such case. It tells the jury that, if "any of the witnesses called by one party" have had the means and opportunity of knowing, etc., the jury should consider the number of such witnesses; that is, if the witnesses called by one party will compare favorably with the witnesses of the other party in the matters enumerated, then you should take into consideration the number that each party has called in the case in determining the facts about which they testify. This is not an accurate statement of the law and might have misled the jury. The court, therefore, did not err in refusing this instruction.

2. The plaintiff's physician was called as a witness in her behalf, and, having described her physical condition

after the accident in question, plaintiff's counsel asked him the following question: "Q. In your opinion, could this condition be brought about by the falling from the street car. by Mrs. Gugler upon the pavement?" This question was objected to. The objection was overruled, and the witness answered: "It could." The defendant insists that this was prejudicial error. The ground of objection is: "To say that they (the injuries) *could* be so produced is dealing with the mere possibility, or remote conjecture." It is true that the answer is not very conclusive, and, unless it is shown by the evidence that the injuries sustained were in fact caused by the accident complained of, they should not be considered in estimating the plaintiff's damages. So far as making the plaintiff's case is concerned, the question and answer might be considered preliminary. It is for the jury to say upon all of the evidence how far the injuries which the plaintiff complained of were caused by the accident in question. The physician was not cross-examined as to the probability that these injuries were the result of the accident. The question was properly submitted to the jury in the instructions, and, in determining whether the injuries were the result of the accident, it was competent for the jury to know that they were of such a nature as might be caused by such an accident, and to determine from all of the evidence in the case whether and to what extent the accident in question caused the physical condition described by the physician. Neither party questioned the physician further as to his opinion of the cause of the conditions which he described, and we cannot say that the defendant was prejudiced by the evidence complained of.

3. The physician was also asked by plaintiff's counsel: "Q. Now, doctor, as to the condition she has been in since this accident occurred, what do you say as to this condition being permanent or simply a temporary condition?" The question was objected to, but the witness was allowed

to answer, and said: "It may be permanent." A motion to strike out this answer was overruled, and the defendant excepted. It will, of course, be conceded that the question itself was a proper one, and the most that can be said in criticism of the answer is that it is incomplete. The physician might have given his opinion as to whether it would or would not be permanent, and either party might have obtained a more definite answer from the witness.

In *Carlile v. Bentley*, 81 Neb. 715, which is relied upon by defendant as holding that such a question and answer are incompetent, the question was: "Doctor, I will ask you if, in your opinion, that wound was such an injury as a permanent injury might result from"? And the answer was: "Yes; all that class of injuries might make a permanent injury." It was held that the question was an improper one. The answer was a complete answer to an improper question, while in the case that we are considering the question was a proper one, and the answer incomplete. The witness was not cross-examined nor required by the defendant to complete his answer. The verdict was not large, considering the injury sustained, and we cannot find that this ruling of the court required a reversal of the judgment.

The plaintiff made unsuccessful efforts to signal the conductor to stop the car, and had been carried by the place where she wished to alight. It appears that she was somewhat confused and may be mistaken in her testimony. The evidence tending to show that she had neglected the usual precautions as to her own safety is quite strong. All of these questions, however, are for the jury, and we cannot say that the verdict is wholly unsupported.

The judgment of the district court is

AFFIRMED.

LETTON, J., not having heard the argument, took no part in the decision.